IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM DALE CARTER, ) | |
| ) | |
|        **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No.: **3:12-cv-00205-JPG-PMF** |
| ) | |
| SHAWNEE PRISON WARDEN ) | |
| MARTIN, *et al.*, ) | |
| ) | |
|        **Defendants.** ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is Defendant Scott Rhine's (Doc. 22) motion to dismiss and Plaintiff William Dale Carter's response (Doc. 38) thereto. For the following reasons, it is recommended that the (Doc. 22) motion to dismiss be granted.

On March 5, 2012, Plaintiff William Dale Carter filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. The Court screened the complaint pursuant to its authority in 28 U.S.C. § 1915A on September 6, 2012. *See* Doc. 13. In that order, the Court characterized Carter's allegations as follows:

> When he filed his complaint, Plaintiff was on parole from a 20-year sentence for armed home invasion. He was due to be released from Shawnee Correctional Center on December 23, 2011. Several weeks before his release date, he signed papers from the Illinois parole board stipulating that he wear an electronic-monitoring ankle bracelet. He assumed he was required to wear the bracelet due to a previous protection order against him. When Plaintiff went to the Shawnee field-services office on December 23, though, he learned that his parole had been violated because the prison staff did not have all the paperwork completed for Plaintiff's release. A field-services staff member showed Plaintiff the parole violation report, and it stated on the facing page "sex offender." On page two the report asked, "Is this current arrest or alleged violation a sex related offense?" The answer on the report said "yes."

> Plaintiff says he is not a sex offender and has never had any sex convictions. He was convicted in 2002 of home invasion, but the jury found him not guilty of "a variety" of sex offenses (Doc. 1, p. 14). *See People v. Carter*, 841 N.E.2d 1052, 1057 (Ill. App. Ct. 2005) (noting the jury returned a verdict of not guilty on the charge of aggravated sexual assault). Yet Shawnee field-services representative Scott Rhine rushed and deceived Plaintiff into signing papers Plaintiff did not understand about the conditions of his parole. Rhine did not explain the consequences of the "sex offender" label. Plaintiff told Rhine he was not a sex offender.
> On January 11, 2012, Rhine had Plaintiff sign more papers. Rhine was impatient and did not want Plaintiff to read the papers before signing them. After only five minutes, another staff member badgered Plaintiff by asking what was taking so long. Rhine said "We have a reader here" (Doc. 1, p. 15). Plaintiff was released on January 12, 2012.
> He filed his complaint in this action on March 5, 2012. His motion for leave to proceed in forma pauperis, filed on August 14, states that he was filing it from a county jail in Texas (Docs. 10 & 11). And the Court has since received notice that as of August 24 Plaintiff is in custody at Stateville Correctional Center.

*Id*. at 2-3. After the reviewing the complaint, the Court found that Carter attempted to bring four claims as follows:

**Count 1:** Violation of due process by the extension of time in prison

**Count 2:** Violation of due process by labeling Plaintiff a sex offender

**Count 3:** Defamation

**Count 4:** False Light Invasion of Privacy

*See id*. at 4. When the screening was completed, the Court ruled that Count 1 failed to state a claim upon which relief may be granted and dismissed the claim. *See id*. at 6. The Court allowed Carter to proceed on Counts 2-4 against Defendant Scott Rhine. *See id*. at 7-10. Counts 3-4 are state-law tort claims brought through the Court's supplemental jurisdiction under 28 U.S.C. § 1367. *See id*. 9-10.

On November 7, 2012, Defendant Scott Rhine filed the instant (Doc. 22) motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Federal Rule of

Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly* (internal quotations omitted)). While detailed factual allegations are not required, the plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements". *Twombly*, 550 U.S. at 555 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Rhine argues that the Court lacks jurisdiction over the state-law tort claims because the Illinois Court of Claims has exclusive jurisdiction. The Illinois Constitution provides that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. The State Lawsuit Immunity Act, 745 ILCS § 5/1 *et seq*., provides that "except as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, the State Officials and Employees Ethics Act, and Section 1.5 of this Act, the State of Illinois shall not be made a defendant or party in any court." 745 ILCS § 5/1. The Court of Claims Act, 705 ILCS § 505/1 *et seq*., provides that the Illinois Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS § 505/8. The question in this case, then, is whether the state-law tort claims are "claims against the State."

On its face, a lawsuit against Rhine in his individual capacity is not technically a claim against the State of Illinois, but the relevant caselaw has made clear that the Court must look beyond these labels. "Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) (citations omitted). An action can be said to be "against the State" when "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State ..." *Id*. (citation and internal quotations omitted).

In *Ingram v. Illinois Dept. of Corr*., Case No. 10-933-GPM, 2011 WL 1519623 (S.D. Ill., Apr. 20, 2011), the Southern District of Illinois had an opportunity to consider whether or not the plaintiff, a former inmate confined in a prison under the authority of the IDOC, could proceed on several state-law claims against the IDOC and the warden of Menard Correctional Center when an inmate died of hyperthermia as a result of being confined in isolation in an overheated cell without adequate monitoring by guards. *Id*. The deceased's successors in interest filed a lawsuit that included claims under the Wrongful Death Act and the Survival Act (Counts 1 and 2), two counts of negligence (Counts 3 and 4), and a § 1983 claim against the IDOC and the warden in his individual capacity (Count 5). *Id*. The *Ingram* court dismissed all of the state law claims on sovereign immunity grounds except for the § 1983 claim against the warden in his individual capacity (Count 5). *Id*. With respect to whether or not the warden's actions were considered within the scope of his employment, the *Ingram* court stated that the supervision, training, and

direction of IDOC personnel at Menard to place prisoners in isolation, monitor their condition, and see that they afforded adequate medical are duties within the scope of the warden's employment. *See id.* at *3. Because the plaintiff only challenged the manner that the warden carried out his duties, there was no allegation that the warden did anything beyond the scope of his employment or normal job functions. *See id.*

Here, like in *Ingram*, Carter is only challenging the manner by which Rhine carried out his official duties of preparing an inmate's release documentation. With respect to the third prong of the *Healy* test, it cannot be disputed that these duties are "ordinarily within that employee's normal and official functions of the State." *Healy*, 549 N.E.2d at 1247. However, the parties disagree as to the first prong; whether Rhine "acted beyond the scope of his authority through wrongful acts." *Id*.

> With respect to the first prong of the test, "[a]n employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the state's business." *Sellers v. Rudert*, 395 Ill.App.3d 1041, 335 Ill.Dec. 241, 918 N.E.2d 586, 592 (Ill.App.Ct. 2009). Correspondingly, a plaintiff seeking to sue employees of an Illinois state agency must show that the defendants harbored personal animosity toward the plaintiff or that they committed the alleged acts for reasons other than what the defendants perceived to be in the best interests of the state agency. *See, e.g., Cortright v. Doyle*, 386 Ill.App.3d 895, 325 Ill.Dec. 874, 898 N.E.2d 1153, 1160 (Ill.App.Ct. 2008) (in a suit against employees of the Illinois Department of Children and Family Services ("DCFS"), finding that the defendants' alleged conduct did not exceed the scope of their authority where plaintiff "failed to allege any specific facts in her complaint that showed the supervisors harbored personal animosity toward her or acted for any purpose other than what they perceived to be the best interests of DCFS"). "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful manner, but sticking his nose in business where it doesn't belong." *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009) (emphasis in original).

*Ingram*, 2011 WL 1519623 at *3. Carter makes statements in both his complaint and his response to the instant motion that Rhine acted "knowingly, willfully, maliciously, and definite

5

ill will" towards Carter. *See, e.g.,* Doc. 1 at 19. However, the Court is required to look beyond labels and legal conclusions and assess whether or not the plaintiff has pleaded factual content that would allow it to draw a reasonable inference that the defendant acted in the wrongful manner alleged. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. *See also Ingram*, 2011 WL 1519623 *4 (providing that a court must look beyond a statement in the complaint indicating that a defendant acted with malice and, instead, look at the factual supporting allegations to draw the inference of whether or not the defendant acted with malice). Accepting all of the allegations as true, the Court cannot draw the inference that Rhine acted intentionally, maliciously, or with ill will. To the contrary, the factual allegations lead the Court to draw the inference that Rhine acted negligently, at a minimum, or with gross negligence, at a maximum, in performing his official duties. Carter's allegations do not describe any past history regarding Rhine or any other reason that Rhine would have personal animosity toward Carter that would lead him to intentionally label Carter as a sex offender. Rather, the allegations describe a rushed process of releasing Carter around the holidays where a mistake (albeit a serious and unfortunate one) may have been made by a state employee exercising his official duties. In sum, the factual allegations of the complaint do not allege that Rhine acted outside the scope of his employment. *See, e.g., id.* at *4 (finding that the factual allegations of the complaint did not allege malice when plaintiff used terms in the complaint, such as "willful and wanton").

Finally, the sole source of the duties Rhine is alleged to have violated (preparing an inmate's release documentation) is Rhine's employment with the state of Illinois. Thus, with respect to the second prong of the *Healy* test, "the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment." *Healy*, 549 N.E.2d at 1247. *See also, e.g., Ingram*, 2011 WL 1519623 *4 (citing cases providing that sovereign

immunity bars jurisdiction in a court other than the Illinois Court of Claims when the alleged "act of negligence arose out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment").

Accordingly, Counts 3 and 4 of the complaint are causes of action "against the state," and the Illinois Court of Claims has exclusive jurisdiction over them. Because subject matter jurisdiction is not present, Counts 3 and 4 of the complaint should be dismissed.

## I. RECOMMENDATION

It is recommended that Defendant Scott Rhine's (Doc. 22) motion to dismiss be granted. It is further recommended that Counts 3 and 4 of the complaint be dismissed. If this Report and Recommendation is adopted in its entirety, Count 2 of the complaint will remain against Defendant Scott Rhine.

**SO RECOMMENDED.**

**DATED: January 28, 2013.**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE